UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ARLENE ALEXANDER ROSS,
*individually and on behalf of all others similarly situated,*

                    *Plaintiff,*

      – against –

SILVER OAK SERVICES PARTNERS, LLC, SILVER OAK SERVICES, LLC, SILVER OAK CP, LLC, SILVER OAK MANAGEMENT III, LP, CARING PEOPLE HOLDCO, LLC, CARING PEOPLE PARENT, LLC, CARING PEOPLE NY OPERATING, LLC, GREGORY M. BARR, ANTHONY SPIRO, AMERISA KORNBLUM, CHRISTINE DELEO, CAROLINA PELLICANI,

                    *Defendants.*

---

**MEMORANDUM & ORDER**
24-cv-07823 (NCM) (ST)

---

**NATASHA C. MERLE**, United States District Judge:

On March 7, 2025, plaintiff Arlene Alexander Ross filed an Amended Complaint ("AC") against several corporate and individual defendants. *See* AC, ECF No. 29. The defendants fall in to three categories: (1) corporate defendants Caring People Holdco, LLC, Caring People Parent, LLC, and Caring People NY Operating, LLC (collectively, the "Caring People Defendants"); (2) individual defendants Anthony Spero, Amerisa Kornblum, Christine Deleo, and Carolina Pellicani (collectively "Individual Defendants"); and (3) foreign defendants Silver Oak Services Partners, LLC, Silver Oak CP, LLC, and Silver Oak Management III, LP (collectively "Silver Oak Defendants") and Gregory Barr ("Defendant Barr" or, collectively with Silver Oak Defendants, "Foreign

1

Defendants"). AC ¶¶ 11–27. Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") on behalf of herself and a putative class of all others similarly situated. *See* AC ¶¶ 92–128. Foreign Defendants now move to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. *See* Mem. of Law in Supp. of Defs' Omnibus Mot. to Compel Arb. and Stay Litig. and Mot. to Dismiss for Lack of Personal Jurisdiction ("Mot.") at 7, ECF No. 56-1.[1] Caring People Defendants and Individual Defendants simultaneously move to compel arbitration and stay the litigation pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). *See* Mot 7.

Because plaintiff has not alleged facts supporting a prima facie case of personal jurisdiction over Foreign Defendants, Foreign Defendants' motion to dismiss is GRANTED. Moreover, because the Court finds that plaintiff agreed to arbitrate her wage-and-hour claims arising under the FSLA and NYLL, Caring People Defendants' and Individual Defendants' motion to compel arbitration and stay the litigation is GRANTED.

## BACKGROUND

Plaintiff is a home health care aide. Affirmation of Arlene Alexander Ross ("Pl. Aff.") ¶ 3, ECF No. 56-19 For many years, plaintiff worked for Reliance Home Senior Services, LLC. Pl. Aff. ¶ 3. Plaintiff applied for a job with Caring People Defendants when her long-time clients changed home care agencies and began to receive care from Caring People Defendants. Pl. Aff. ¶ 3.

Caring People Defendants' hiring and onboarding processes are standardized. Decl. of Christine Deleo ("Deleo Decl.") ¶ 14, ECF No. 56-3. At the time plaintiff applied,

---

[1]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Caring People Defendants generally conducted interviews remotely. Deleo Decl ¶ 8; *see also* Ross Decl. ¶ 4 ("During the process, I never went to any of Caring People's physical locations").[2] As part of Caring People's hiring process, once a candidate successfully completes an initial interview they are sent a link to complete required onboarding documents through a platform called ExactHire. Deleo Decl. ¶ 8; *see also* Decl. of Allen Edwards ("Edwards Decl.") ¶ 4, ECF 56-29. To sign a form on ExactHire, a user must log in to their account and must enter their account password for each form they sign. Edwards Decl. ¶ 5. ExactHire collects the prospective employee's name, date, timestamp, and IP address from the paperwork a user submits through the platform. Edwards Decl. ¶ 5.

All new Caring People hires are required to sign an Acknowledgment of Receipt of Caring People Forms which identifies, among other documents, the Mutual Arbitration Agreement applicable new hires. Deleo Decl. ¶ 9, 11; *see* Deleo Decl. Ex. 3 at 1 ("Acknowledgement Form"), ECF No. 56-6; *see* Deleo Decl. Ex. 3 at 3–7 ("Arbitration Agreement"); Edwards Decl. ¶ 9. All new hires are also required to initial each document identified in the Acknowledgment Form. Deleo Decl. ¶ 9. If the new hire completes the Acknowledgment Form remotely, they must do so on ExactHire. *See* Deleo Decl. ¶¶ 8, 10. When an employee completes onboarding forms on ExactHire the forms are signed electronically. Deleo Decl. ¶ 10.

During onboarding, Caring People Defendants inform new hires that their offer of employment is conditioned on their agreement to arbitrate disputes according to the Arbitration Agreement. Deleo Decl. ¶ 12. No employee is allowed to begin working for

---

[2]    Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Caring People Defendants without returning a completed on-boarding package—including the Acknowledgement Form and Arbitration Agreement. Deleo Decl. ¶ 13.

The Arbitration Agreement covers "any and all disputes, past, present or future, that may arise between Employee . . . and Company, including without limitation any dispute arising out of or related to Employee's . . . employment . . . with Company." Arbitration Agreement 4 (capitalization altered). The Arbitration Agreement specifically covers wage-and-hour claims: "This Agreement applies . . . to claims based upon or related to . . . wages, minimum wage and overtime or other compensation claimed to be owed, breaks and rest periods, expense reimbursement, seating, termination, tort claims, equitable claims, and all statutory and common law claims unless specifically excluded . . . ." Arbitration Agreement 4. The Arbitration Agreement includes a class and collective action waiver that requires employees to "bring any dispute[s] in arbitration on an individual basis only." Arbitration Agreement 5.

Prior to starting her employment with Caring People Defendants, plaintiff filled out tax documents and faxed those documents and her driver's license to Caring People Defendants. Ross Decl. ¶ 5; *see also* Deleo Decl. ¶ 17; Deleo Decl. Ex. 1, ECF No. 56-4. On August 24, 2021, Caring People Defendants extended plaintiff a conditional offer of employment. Deleo Decl. Ex. 2, ECF No. 56-5. The offer of employment was subject to the completion of "any additional paperwork." Deleo Decl. Ex. 2; *see also* Deleo Decl. ¶ 13. ("No employee is allowed to start a case without having signed and returned a complete on-boarding package, which includes the Acknowledgment Form and Mutual Arbitration Agreement.").

That same day, plaintiff submitted an electronically signed Acknowledgment Form and an electronically initialed Arbitration Agreement to Caring People Defendants via the

ExactHire platform. Deleo Decl. ¶ 19; Arbitration Agreement 7; Edwards Decl. ¶ 9; Edwards Decl. Ex. 1 at 2, 8, ECF No. 56-30. Plaintiff submitted several other documents to the ExactHire platform on that day and the day after, including: a Live In Contract, Drivers Authorization, Earned Sick Time Notice Acknowledgement, Employee Handbook, Confidentiality and Non-Solicitation Agreement, Direct Deposit Application, federal and state tax forms, an Acknowledgement/Consent Form for Fingerprints & Disclosure of Criminal History, and vaccine records. Edwards Decl. ¶¶ 11–20; *see* Edwards Decl. Exs. 2–11.

Caring People Defendants employed plaintiff from May 2022 through February 2024. AC ¶¶ 10, 44.

On November 11, 2024, plaintiff filed a complaint against Caring People NY Operating, LLC, Caring People, Inc., Steven East, and Carolina Pellicani, asserting claims under the FSLA and NYLL. Compl. ¶¶ 1–2, ECF No. 1. On March 7, 2025, plaintiff filed the AC, removing Steven East as a defendant and adding additional corporate and individual defendants, including Foreign Defendants. AC ¶ 1. On October 31, 2025, defendants filed an omnibus motion to compel arbitration as to Caring People Defendants and Individual Defendants, and to dismiss for lack of personal jurisdiction as to Foreign Defendants. *See generally* Mot.

## DISCUSSION

### I.    **Personal Jurisdiction**

#### A.    Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(2), "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013).

5

Courts may rely on materials outside the pleading, *Dhamala v. Elsevier, B.V.*, No. 24-cv-06409, 2026 WL 248040, at *3 (E.D.N.Y. Jan. 30, 2026) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)), or "determine the motion on the basis of affidavits alone," *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013); *see also Mercante v. Tarzia*, No. 24-cv-08471 , 2025 WL 3073739, at *4 (E.D.N.Y. Nov. 4, 2025) (collecting cases), when considering a motion for dismissal for lack of personal jurisdiction. If a "court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84. That is, a plaintiff must allege "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). A court, however, "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (first quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); and then quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

A court determines "whether there is jurisdiction over the defendant under the relevant forum state's laws." *Harris v. Am. Acct. Ass'n*, No. 22-811, 2023 WL 2803770, at *1 (2d Cir. Apr. 6, 2023) (summary order). "Under New York's long-arm statute, there are two ways in which a federal court sitting in diversity in New York may exercise personal jurisdiction over a non-resident defendant: general jurisdiction under

N.Y.[ ]C.P.L.R. § 301, or specific jurisdiction under N.Y.[ ]C.P.L.R. § 302." *Zoological Soc. of Buffalo, Inc. v. CarvedRock, LLC*, No. 10-cv-00035, 2011 WL 6329929, at *4 (W.D.N.Y. Oct. 12, 2011), *report and recommendation adopted*, 2011 WL 6329872 (W.D.N.Y. Dec. 19, 2011).

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). That is, "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

### 1.      General Jurisdiction

A corporation that is neither incorporated in New York nor licensed to do business in New York is subject to the general jurisdiction of a court "in New York if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Realuyo v. Abrille*, 93 F. App'x 297, 298 (2d Cir. 2004) (summary order) (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536 (1967)); *see* N.Y. C.L.P.R. § 301. A corporation is considered to be present in New York, and therefore subject to personal jurisdiction, "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

Where a plaintiff claims that personal jurisdiction over a foreign corporation is proper based on the activities of a subsidiary "the presence of the subsidiary alone does not establish the parent's presence in the state." *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 381 (E.D.N.Y. 2025) (quoting *Jazini*, 148 F.3d at 184). To establish personal

jurisdiction, the plaintiff must show that "[t]he subsidiary [is] . . . either an agent or a mere department of the foreign parent." *Id.*

To establish that a subsidiary is an agent of the parent, the plaintiff must show that "the subsidiary does all the business which the parent corporation could do were it here by its own officials." *LPD New York, LLC v. Adidas Am., Inc.*, No. 15-cv-06360, 2017 WL 1162181, at *17 (quoting *Jazini*, 148 F.3d at 184). On the other hand, whether a subsidiary is a "mere department" of the parent depends on four factors: "1) common ownership; 2) financial dependence of the subsidiary on the parent corporation; 3) the degree of interference in personnel selection and a failure to observe corporate formalities; and 4) the degree of control the parent corporation wields over the subsidiary's marketing and operational policies." *Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15-cv-04045, 2017 WL 2839640, at *1 (S.D.N.Y. June 29, 2017) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)).

### 2.    *Specific Jurisdiction*

Under New York law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, "so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 335 (E.D.N.Y. 2021) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)).

N.Y. C.L.P.R. § 302(a)(1) permits the exercise of personal jurisdiction over a non-domiciliary if two conditions are met: (1) the nondomiciliary must "transact[] . . .business in New York" and (2) there must be "an articulable nexus, or a substantial relationship,

between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Finally, "[i]n cases involving corporate defendants, the court's exercise of personal jurisdiction over a corporation's officer" must be "predicated on a showing that the officer engaged in personal conduct that is related to the transaction that underlies the claim." *Grp. One Ltd.*, 523 F. Supp. 3d at 336 (emphasis omitted) (collecting cases); *see Palmore v. Napoli Shkolnik PLLC*, No. 23-cv-01616, 2024 WL 1330003, at *8 (S.D.N.Y. Mar. 28, 2024) ("[A] general allegation that an officer controls a corporation is insufficient, by itself, to establish personal jurisdiction.").

B.    The Parties' Arguments Regarding Personal Jurisdiction

Foreign Defendants contend that they are not subject to general or specific personal jurisdiction in New York and, accordingly, all claims against them should be dismissed. Mot. 21.

Silver Oak Defendants argue that plaintiff fails to allege that they have "any connection to the State of New York" and, accordingly, fails to plausibly plead that they are "at home" in New York. Mot. 23 (citing AC ¶¶ 11, 13–14). Silver Oak Defendants note that, because they are Delaware corporations, exercising general jurisdiction would only be proper in the "exceptional case" where their "contacts with [New York] are so substantial as to render [them] at home in that state." Mot. 23.

Silver Oak Defendants assert that plaintiff's theory of control—Silver Oak Defendants' ownership of a 62% stake in Caring People Defendants—is insufficient to establish such an "exceptional case." Mot. 24–25; *see also* Pl's Mem. of Law in Opp'n to Defs' Omnibus Mot. ("Opp'n") at 8, ECF No. 56-18. First, they say that plaintiff cannot allege an agency relationship, as the business that Caring People Defendants conduct in

New York cannot be done by Silver Oak Defendants. Mot. 27. Second, they say that plaintiff cannot establish common ownership between Silver Oak Defendants and Caring People Defendants. Mot. 26. This flaw, they say, is fatal to plaintiff's claim that Caring People Defendants are a "mere department" of Silver Oak Defendants. Mot. 26.

Moreover, Silver Oak Defendants assert that specific personal jurisdiction is improper because plaintiff has not tied her wage-and-hour claims to any contacts that Silver Oak Defendants allegedly had with the State of New York. Mot. 28.

For his part, Defendant Barr argues that he lacks the continuous and systematic contact with New York that would make general personal jurisdiction proper because he is a Florida resident, has never lived or owned property in New York, has never maintained an office in New York, and does not personally do business in New York. Mot. 28.

As to specific jurisdiction, he contends that allegations about his status as managing partner of Silver Oak Defendants are insufficient to establish that he engaged in personal conduct that "directly tie[s] [him] to . . . the underlying suit." Mot. 30.

Plaintiff counters that general personal jurisdiction over Foreign Defendants is proper because they exercise dominion and control over Caring People Defendants' finances, policies, and employment practices. Opp'n 17–18. Plaintiff asserts that, by "deliberately acquir[ing]" Caring People Defendants, Foreign Defendants took over Caring People Defendants' finances, management, and policies. Opp'n 18–19. Accordingly, plaintiff argues, Caring People Defendants are a "mere department" of Foreign Defendants. Opp'n 19.

Plaintiff contends that specific jurisdiction is also appropriate. Opp'n 19. Because Foreign Defendants control the operations of Caring People Defendants, plaintiff argues,

they controlled the operations that led to her claims for unpaid wages and labor law violations. Opp'n 20.

Finally, plaintiff says that the exercise of personal jurisdiction over Foreign Defendants comports with due process because Foreign Defendants purposefully availed themselves of New York by profiting from the activities of and their direct control over Caring People Defendants. Opp'n 20. She says fairness demands that New York exercise jurisdiction over Foreign Defendants because New York has a compelling interest in adjudicating wage-and-hour disputes and because she would be prejudiced if forced to litigate elsewhere. Opp'n 21.[3]

C.      Application

1.      *General & Specific Jurisdiction Over Silver Oak Defendants*

Plaintiff's core argument is that Silver Oak Defendants control Caring People Defendants so completely that the Court may properly exercise personal jurisdiction over the former. *See* Opp'n. 17–18. The facts alleged, however, do not support that conclusion.

Plaintiff does not allege any specific facts about Silver Oak Defendants' control over Caring People Defendants. Indeed, the AC only substantively references Silver Oak Defendants two times. *See* AC ¶ 31 ("Silver Oak Defendants acquired Caring People, Inc. in or about 2017."); AC ¶ 32 ("The Silver Oak Defendants entities [sic] have a financial interest in this litigation."). Plaintiff's declaration is silent as to these defendants. *See* Ross Decl. Plaintiff's counsel's declaration attests to the veracity of several documents from a case involving Silver Oak Defendants that is currently pending in the Delaware Court of

---

[3]      Plaintiff additionally asserts that Defendant Barr is subject to "jurisdiction" of an unspecified type based on his role as managing partner of Silver Oak. Opp'n 21–22. The Court addresses this argument *infra* § I.C.2.

Chancery (the "Delaware Action"), but similarly does not make any factual allegations regarding Silver Oak Defendants' control over Caring People Defendants. *See* Decl. of Shelly A. Leonard ("Leonard Decl."), ECF No. 56-20.

The few allegations contained in plaintiff's Opposition do not suffice to establish that general or specific jurisdiction is proper. The mere presence of a subsidiary within a forum state does not create personal jurisdiction over the parent corporation. *Jazini*, 148 F.3d at 184. Indeed, the subsidiary must be either an "agent" or a "mere department of the foreign parent." *Id*. Plaintiff does not plead facts supporting the conclusion that Caring People Defendants fall into either of these categories.

First, plaintiff has not plausibly alleged that Caring People Defendants are an agent of Silver Oak Defendants. Plaintiff alleges no facts supporting the conclusion that Caring People Defendants "do[] all the business which [Silver Oak Defendants] could do were [they] here by [their] own officials." *LPD New York*, 2017 WL 1162181, at *17 (quoting *Jazini*, 148 F.2d at 184). Put another way, plaintiff has not alleged that Silver Oak Defendants would be able to run a home health care business in New York. Silver Oak Defendants are not licensed to do business as a home care agency in New York. Decl. of Gregory Barr ("Barr Decl.") ¶¶ 20, 34, 48, ECF No. 56-2. Indeed, Silver Oak Defendants are not registered to do business in New York at all. Barr Decl. ¶¶ 19, 33, 47. Accordingly, Caring People Defendants are not an agent of Silver Oak Defendants.

Second, plaintiff has not plausibly alleged that Caring People Defendants are a "mere department" of Silver Oak Defendants because she has not sufficiently alleged common ownership between Caring People and Silver Oak Defendants. Common ownership is "essential" to finding that a subsidiary is a mere department of the parent corporation. *Beech Aircraft*, 751 F.2d at 120 ("New York courts regard one factor as

essential to the assertion of jurisdiction over a foreign related corporation and three others as important. The essential factor is common ownership."); *see also Chong v. HealthTrnoics, Inc.*, No. 06-cv-01287, 2007 WL 9735355, at *6 (E.D.N.Y. June 20, 2007) ("Only the first factor—common ownership—is essential to a finding that a subsidiary is a 'mere department' of the parent corporation . . . ."). While plaintiff asserts that Silver Oak Defendants acquired a 62% stake in Caring People Defendants, Opp'n 8, "nearly identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes." *Beech Aircraft*, 751 F.2d at 120. Indeed, a 62% ownership stake is not even a "close[] call." *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 52 (S.D.N.Y. 1999) (finding a 90% ownership interest was "sufficient to satisfy the nearly identical ownership requirement"); *see also Levant Line, S.A. v. Marine Enters. Corp.* (*In re Levant Line, S.A.*), 166 B.R. 221, 232 (Bankr. S.D.N.Y. 1994) ("[I]ndirect ownership of 52% of [a subsidiary] . . . . is not sufficient to establish the nearly identical ownership interests required for personal jurisdiction under a mere department theory.")

Nor has plaintiff alleged facts establishing that the other *Beech* factors favor finding that Caring People Defendants occupy "mere department" status. The 'non-essential' *Beech* factors are: (1) "financial dependence of the subsidiary on the parent corporation," (2) "the degree of interference in personnel selection and a failure to observe corporate formalities," and (3) "the degree of control the parent corporation wields over the subsidiary's marketing and operational policies." *Int'l Diamond Imps.*, 2017 WL 2839640, at *2 (quoting *Beech Aircraft*, 751 F.2d at 120–22).

Plaintiff relies on litigation papers and discovery materials in the Delaware Action to establish Foreign Defendants' alleged acquisition and control of Caring People. *See*

Opp'n 8–11. These documents do not lead to a reasonable inference warranting the exercise of the Court's jurisdiction.

The Delaware Action is a dispute between several Caring People entities and Steven East, former CEO and Board member of the Caring People entities. Leonard Decl. Ex. B ("East Answer") ¶¶ 23–24, ECF No. 56-22. Silver Oak CP, LLC, is involved in the Delaware Action as a third-party defendant. Leonard Decl. Ex. C ("Silver Oak Answer") at 3, ECF No. 56-23. The Delaware Action involves Mr. East's sale of the Caring People entities to a holding company. East Answer ¶ 11. Plaintiffs in that case allege Mr. East took steps to undermine and devalue the Caring People entities, violating the sale agreement and his fiduciary duties as a member of the Board. East Answer ¶ 1. Plaintiff points to Mr. East's and Silver Oak CP, LLC's Answers and a 30(b)(6) Notice of Deposition of Silver Oak as evidence of Silver Oak's control over Caring People Defendants. Opp'n 8–10.

In the Delaware Action, Silver Oak Defendants were asked to admit certain details about a "Holdco LLC Agreement," including specifics of the makeup of Holdco's Board of Directors. Opp'n 8. Silver Oak Defendants made no admissions in response to that allegation, but rather "refer[ed] the Court [in that case] to the Holdco LLC Agreement for its full and accurate contents." *Id.*; *see* Silver Oak Answer ¶ 39. A non-party's allegations regarding the structure of Silver Oak Defendants' business—in a complaint in a different case—does not provide information that allows this Court to draw conclusions about Silver Oak Defendants' involvement in "personnel selection" for Caring People Defendants or "fail[ure] to observe corporate formalities" between itself and Caring People Defendants. *See Int'l Diamond Imps.*, 2017 WL 2839640, at *2 (quoting *Beech Aircraft*, 751 F.2d at 120–22).

14

As additional evidence of Silver Oak Defendants' alleged control of Caring People Defendants, plaintiff points to arguments made in a letter opposing leave to file a summary judgment motion in the Delaware Action. Opp'n 9 (citing Leonard Decl. Ex. E ("Delaware Action Ltr."), ECF No. 56-25). But those arguments, related to the cause of Caring People Defendants' "attrition and revenue loss," Opp'n 9 (quoting Delaware Action Ltr. 5), do not provide the Court with facts that suggest that Caring People Defendants "would be unable to function without the financial support of the [Silver Oak Defendants]," *Gallelli v. Crown Imps., LLC*, 701 F. Supp. 2d 263, 273–74 (E.D.N.Y. 2010). At most, they suggest that Silver Oak CP, LLC hired Caring People Defendants' CEO and Caring People Defendants' clients blamed that CEO for staffing inconsistencies and poor communication. *See* Delaware Action Ltr. The list of deposition discussion topics plaintiff cites is similarly unavailing because it gives the Court no insight into the substance of what was discussed during those depositions. *See* Leonard Decl. Ex. D ("Delaware Action Notice ") at 10–11, ECF No. 56-24.

Finally, even accepting that non-party Steven East, who was an employee at Caring People, "participated in a marketing video about Silver Oak portfolio companies," Opp'n 10 (quoting Silver Oak Answer 33), that does not establish the existence or degree, if any, of Silver Oak Defendants' control over Caring People Defendants' marketing policies.

In sum, plaintiff has not plausibly alleged that Silver Oak Defendants' "control of the [Caring People Defendants] is pervasive enough that the corporate separation is more formal than real." *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 734 (S.D.N.Y. 2001). Accordingly, general personal jurisdiction over Silver Oak Defendants is not warranted.

Nor has plaintiff established the Court's specific jurisdiction over Silver Oak Defendants. New York's long arm statute permits courts to "exercise personal jurisdiction over [a] non-domiciliary" where the "cause of action aris[es] from any of the acts enumerated in [the statute]." N.Y. C.P.L.R. § 302(a). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168.

Even assuming *arguendo* that Silver Oak Defendants transacted business within the state because Caring People Defendants were a "key value driver" for Silver Oak Defendants' portfolio, Opp'n 10, plaintiff fails to connect that transaction to her FSLA and NYLL claims. That is, she does not plausibly explain how her wage-and-hour claims "arise from" the Silver Oak Defendant's controlling interest in Caring People Defendants. *Licci*, 732 F.3d at 168. Plaintiff's vague reference to the topics to be discussed during a deposition in the Delaware Action, Opp'n 9–10, and conclusory allegations that Silver Oak Defendants "exercised direct control over Caring People's finances, policies, and employment practices," Opp'n 18, lack the factual support required to conclude that there is "a relatedness between the transaction and the legal claim." *Licci*, 732 F.3d at 168. "[C]onclusory statements—without any supporting facts" do not establish a prima facie case that the Court has personal jurisdiction. *Jazini*, 148 F.3d at 185.

### 2.    *General & Specific Jurisdiction Over Defendant Barr*

For similar reasons, plaintiff has not made a prima facie showing that the Court may exercise jurisdiction over Defendant Barr. General jurisdiction is improper given Defendant Barr's lack of contact with the State of New York. Defendant Barr is a resident of the state of Florida and has been since 2020. Barr Decl. ¶ 2. He has never lived or owned

16

property in the State of New York and does not personally do business in the State of New York. Barr Decl. ¶¶ 3, 5. "An individual defendant cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." *Broumand v. Joseph*, 322 F. Supp. 3d 8, 15 (S.D.N.Y. 2021).

Plaintiff argues that specific jurisdiction over Defendant Barr is proper because "he was the controlling voice on the company responsible for the day-to-day operation of Caring People." Opp'n 21. Under New York Law, however, plaintiff "must allege personal conduct by the officer related to the transaction or tort which is the basis for [her] claim." *Langer v. Paysafe Partners LP*, No. 19-cv-04388, 2020 WL 7684885, at *5 (E.D.N.Y. May 22, 2020), *report and recommendation adopted*, 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020).

Here, plaintiff's allegation that Defendant Barr "participated and continues to participate in the day-to-day operations of Defendants," AC ¶ 19, is not sufficiently specific to support the inference that he made the decisions that underlie *plaintiff's* wage-and-hour claims. *Langer*, 2020 WL 7684885, at *4 ("A general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction.").

Accordingly, plaintiff has not plausibly alleged that personal jurisdiction over Defendant Barr is proper.[4]

---

[4]    Because there is no statutory basis for personal jurisdiction over Foreign Defendants, the Court "need not determine whether exercising personal jurisdiction would violate constitutional due process." *Donner v. Der Spiegel Gmbh*, 747 F. Supp. 3d 681, 694 (S.D.N.Y. 2024), *aff'd*, No. 24-2654-cv, 2025 WL 2985764 (2d Cir. Oct. 23, 2025).

**II.    Compelling Arbitration**

    A.    <u>Legal Standard</u>

When deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Accordingly, it is appropriate to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.*

To decide a motion to compel arbitration, a court must determine: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–22 (2d Cir. 2019). A district court must stay proceedings once it is "satisfied that the parties have agreed . . . to arbitrate an issue or issues underlying the district court proceeding." *Nicosia*, 834 F.3d at 229.

Where, as here, a plaintiff challenges the creation of an agreement to arbitrate, federal courts apply "ordinary state-law principles that govern the formation of contracts to decide whether parties have agreed to arbitrate a certain matter." *Pettersen v. Volcano Corp.*, No. 18-cv-03021, 2020 WL 6323937, at *3 (E.D.N.Y. Sept. 8, 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), *report and recommendation adopted*, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020). In New York, "arbitration will not be compelled absent the parties' clear, explicit and unequivocal agreement to arbitrate." *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) (quoting *Fiveco, Inc. v. Haber,* 11 N.Y.3d 140, 144 (2008)). Such an agreement can be expressed

through a party's words or conduct. *Brown v. Coca-Cola Enters.*, No. 08-cv-03231, 2009 WL 1146441, at *6 (E.D.N.Y. Apr. 28, 2009) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006)).

B.      Application

Caring People Defendants contend that plaintiff entered into a valid agreement to arbitrate, pointing to the Acknowledgment Form bearing plaintiff's electronic signature, Acknowledgement Form 1; Edwards Decl. Ex. 1 at 2, and the Arbitration Agreement bearing plaintiff's initials, Arbitration Agreement 7; Edwards Decl. Ex. 1 at 8; *see* Mot. 16–19. They also rely on the declaration of Caring People's Chief Operating Officer, Christine Deleo, who described the requirements of Caring People Defendants' onboarding process, including that "[n]o employee is allowed to start a case without having signed and returned a complete[d] . . . Acknowledgment Form and . . . Arbitration Agreement." Deleo Decl. ¶ 13; *see* Mot. 10. Deleo also stated that every new employee is "inform[ed] . . . that their offer of employment, and continued employment, is conditioned on their agreement to arbitrate in accordance with the terms and conditions of the . . . Arbitration Agreement." Deleo Decl. ¶ 12; *see* Mot. 10. Deleo described Caring People Defendants' onboarding process as "automated[,]" with "all employees [going] through the same . . . process." Deleo Decl. ¶ 14.

Plaintiff disputes not only that she signed a valid agreement to arbitrate, but that she ever received one at all. Ross Decl. ¶¶ 5, 8, 10 ("Nothing was ever sent to my home address; I did not even receive paystubs during my time with Caring People. . . . I never received a . . . Mutual Arbitration Agreement . . . or . . . Acknowledgment Form. . . . Never did I initial documents with AA. So to clarify, I never signed this document electronically or otherwise."). Further, plaintiff suggests that the documents that Caring People

Defendants rely on are "suspicious" due to the fact that the "font for the signature is different than the font for the initials," her initials "are AAR not AA," and the signatures on the documents are "from 3-4 different IP addresses . . . [which] do not show location." Opp'n 15 (emphasis omitted). Plaintiff contends that a litany of additional information is required to authenticate the Authentication Form and Arbitration Agreement. *See* Opp'n 16.[5]

Despite plaintiff's contentions to the contrary, the Court finds the evidence that she signed the Acknowledgement Form and initialed the Arbitration Agreement sufficient to conclude that she agreed to the Arbitration Agreement. Indeed, "[a]rbitration agreements signed with an electronic signature[s] under similar circumstances have been found to be valid." *Pettersen*, 2020 WL 6323937, at *4 (collecting cases and concluding that "direct evidence that the [p]laintiff signed the document in question" is not required where there is "[c]ircumstantial evidence supporting the validity of an electronic signature").

For example, in *Savarese v. J.P. Morgan Chase*, the court rejected a plaintiff's argument that an agreement containing his electronic signature was invalid even though he claimed "he ha[d] no recollection of having e-signed any such agreement," finding "[a]

---

[5]    Plaintiff argues that "at the very least" the following information is needed for authentication: "(1) digital audit trail(s) and email address associated with the e-signature; (2) IP address, time stamp, location and any document modification made during any purported signing of the e-signed arbitration clause; (3) all documents relating to the e-signature platform purportedly used for Ms. Ross to sign the agreement including user login information . . . ; (4) authentication process used to capture e-signature and the security mechanism for e-signatures; (5) [d]efendants' IT departments search that shows where these IT addresses are from; (6) The complete 14 page fax that was sent to [d]efendants; (7) Ms. Ross' first paycheck and paystub evidencing first day of employment; (8) a W2 evidencing her employment in 2021; and (9) documents relating to when the gentleman she was taking care of switched from Reliance to Caring People." Opp'n 16.

20

mere lack of recollection of signing an agreement . . . insufficient on its own to defeat a finding that the contract existed." No. 16-cv-00321, 2016 WL 7167968, at *5 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016). Similarly, in *Perez v. Ruby Tuesday, Inc.*, the court was not persuaded by plaintiff's argument that "she could not have electronically signed the [a]greement" because she did not put forward "a shred of evidence that might cast doubt on the authenticity" of the signed agreement. No. 16-cv-00795, 2019 WL 355637, at *3–4 (N.D.N.Y. Jan. 28, 2019). And in *Pettersen v. Volcano Corp.*, the plaintiff's assertion that she "lacked the technical capability to access the required onboarding documents" did not "rise to the level of doubt sufficient to question the validity of the electronic signatures offered by [d]efendants." 2020 WL 6323937, at *5.

Here, plaintiff's bare assertion that "she never saw nor received the arbitration agreement" Opp'n 14, is not enough to overcome Caring People Defendant's proffered evidence that she did. That is especially true in light of the declaration from Allen Edwards, the Chief Technology Officer of ExactHire. In the declaration, Mr. Edwards authenticated the Acknowledgement Form and Arbitration Agreement bearing plaintiff's signature and initials as the same ones that were submitted to the hiring platform the same day plaintiff received a conditional offer of employment. Edwards Decl. ¶¶ 6–7; *compare* Edwards Decl. Ex. 1, *with* Acknowledgement Form, *and* Arbitration Agreement. Accordingly, plaintiff's signature on the referenced forms establishes that plaintiff agreed to arbitrate. *See Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (finding that employee had agreed to arbitrate based on records from "the electronic portal on which [the defendant] maintain[ed] its hiring paperwork and through which new employees sign[ed] th[o]se documents").

The conclusion that plaintiff agreed to arbitrate would be the same even if the Court were to disregard the evidence of plaintiff's signature. In cases where a defendant is not able to locate the alleged arbitration agreement, "employee[s] may be bound to an arbitration clause . . . where there is evidence that an employee can be deemed to have accepted the arbitration policy by continuing to work after being advised that it was [their] responsibility to read and understand all of the company policies including the arbitration policy." *Gonzalez v. Cheesecake Factory Rests., Inc.*, No. 21-cv-05017, 2024 WL 989881, at \*6 (E.D.N.Y. Mar. 6, 2024); *see also Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 69 (2d Cir. 2009) (summary order).

Here, Ms. Deleo affirmed that plaintiff would not have been able to begin her employment prior to submitting her onboarding paperwork, including the Arbitration Agreement. Deleo Decl. ¶ 13. Further, the evidence demonstrates that Caring People Defendants have a practice of "inform[ing] new hires during onboarding that their offer of employment, and continued employment, is conditioned on their agreement . . . with the terms and conditions of the . . . Arbitration Agreement." Deleo Decl. ¶ 12. Thus, there is a "presumption of notice" that plaintiff's continued employment would constitute assent to be bound by the Arbitration Agreement. *Gonzalez*, 2024 WL 989881, at \*7. Plaintiff has put forth no evidence to rebut that presumption. Nor does she dispute that during her onboarding, she was told that her employment was conditioned on her agreement to arbitrate in accordance with the Arbitration Agreement. Accordingly, by working for Caring People Defendants for nearly two years after that onboarding session, plaintiff "manifest[ed] assent to the arbitration agreement." *Gil v. Bensusan*, No. 18-cv-10657, 2019 WL 12334706, at \*5 (S.D.N.Y. Oct. 30, 2019).

22

The remaining elements necessary to compel arbitration have been satisfied. The plain language of the Arbitration Agreement provides that it covers "any and all disputes, past present or future, that may arise between Employee . . . and Company, including without limitation any dispute arising out of or related to Employee's . . . employment . . . with Company." Arbitration Agreement 4 (capitalization altered). The Arbitration Agreement also provides language specifically covering plaintiff's claims here. Arbitration Agreement 4 ("[T]his Agreement applies . . . to claims based upon or related to . . . wages, minimum wage and overtime or other compensation claimed to be owed, breaks and rest periods, expense reimbursement, seating, termination, tort claims, equitable claims, and all statutory and common law claims unless specifically excluded below."). And it is well settled that claims arising under the FLSA and NYLL are arbitrable. *See, e.g.*, *Gonzalez*, 2024 WL 989881, at *1 (compelling arbitration for claims arising under the NYLL); *Castellanos v. Raymour's Furniture Co.*, 291 F. Supp. 3d 294, 296, 302 (E.D.N.Y. 2018) (compelling arbitration for claims arising under the FLSA); *Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368, 370 (E.D.N.Y. 2013) (compelling arbitration for claims arising under the NYLL and FLSA).

## CONCLUSION

For the foregoing reasons, Foreign Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. Accordingly, this action shall be dismissed as to defendants Silver Oak Services Partners, LLC, Silver Oak CP, LLC, Silver Oak Management III, LP, and Gregory Barr. Further, because all claims in the action will be referred to arbitration, a stay is mandatory. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings necessary after all claims have been referred to arbitration and a stay requested."). Accordingly, Caring People Defendants' and

23

Individual Defendants' motion to compel arbitration and stay the litigation is GRANTED. The parties shall provide a status report regarding the status of arbitration within thirty (30) days of the completion of arbitration or by December 1, 2026, whichever is sooner.

      **SO ORDERED.**

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Dated:       June 1, 2026
           Brooklyn, New York